UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6093-CR-~~FERGUSON~~ *Gonzalez*

UNITED STATES OF AMERICA,
Plaintiff,

V.

RAMON PERDOMO,

Defendant.

_____/



### DEFENDANT'S MOTION FOR SPECIFIC KYLES AND BRADY INFORMATION

Defendant, Ramon Perdomo, through counsel and pursuant to the dictates of *Kyles V. Whitley*, 514 U.S. 419(1995); *Brady V. Maryland*, 373 U.S. 83 (1963); *United States v. Agurs*, 427 U.S. 971(1976); *United States v Bagley*, 473 U.S. 667(1985); and Fed. R. Crim. P.16, respectfully moves for entry of an order requiring the government to disclose and provide the following specific information and materials known, or that with the exercise of due diligence should be known, to the government. This information is favorable to the Defendant on the issues of guilt or punishment, including impeachment information and other material and evidence tending to discredit the government's witnesses, in addition to any other matters known to the government that may be exculpatory or otherwise favorable to the defendant.

Recently, the government notified defendant's counsel of the fact that Manuel Castro, will be a witness for the government against the defendant in the trial of this case.

1

The defendant requests the following documents and information regarding the cooperating witness in this case Manuel Castro:

A. The full name of the cooperating witnesses, including any alias;

B. The case number and name of the prosecutions in which the cooperating witnesses utilized m this case has previously been utilized as a cooperating witness;

C. The case names and numbers of any trials or evidentiary hearings at which the cooperating witnesses have testified concerning: (1) their own prior criminal activity; (2) payments or rewards provide2d to them by the government; (3) efforts made to induce others to participate in criminal activity; (4) or any other law enforcement-related matters;

D. Any ledger, sheet, or other document which details the sums paid the cooperating witnesses, or family or friends, in this and other cases in which said informant assisted the government, and the purpose of each such payment; all tax returns filed by the cooperating witness, or a statement indicating that the cooperating witness has not reported monies received from law enforcement on his tax returns.

E. Any information, whether or not memorialized in a memorandum, agent's report, or other writing, regarding promises of immunity, leniency, preferential treatment, or other inducements made to the cooperating witness, or to any family member, friend, or associate of the witnesses, in exchange for the witness' cooperation, including the dismissal or reduction of charges, the nonfiling of any potential criminal charge, the promise not to arrest or detain for a potential criminal charge, assisting in matters of sentencing or immigration; promises or expectancies regarding payments for expenses or testimony, or eligibility for any award or reward; hi addition to information regarding payments, promises of immunity, leniency,

preferential treatment, or other inducements made to the g6verrnent witnesses, any records or information regarding payments, promises of immunity, leniency, preferential treatment offered or afforded to any family member, friend, or associate of any prospective witness in exchange for said witness's cooperation.

F. Any information or records concerning any actual or implied threats of investigation or prosecution (including deportation, exclusion, etc., by INS) made by the government to the cooperating witness, or family members or associates of the witness, including information as to the underlying conduct precipitating such investigations. Additionally, all information indicating the current immigration status of the informant.

G. Any statement made, or information or document provided by a cooperating witness or other individual, within the knowledge of the government or its agents, that conflicts in part or in whole with: (1) the statement of another prospective witness, (2) a prior statement made by the same government witness, with regard to the subject matter of the expected trial testimony of the witness, or (3) any other documents or witnesses, including but not limited to:

H. The name and current whereabouts of any eyewitness to the underlying events of this case whom the government does not anticipate calling as a witness at trial and a copy of any statement made by, or summary of interview of; such witness.

I. Any report, document, or information which details the criminal activities of the cooperating witnesses which were undertaken by him/her without the authority or approval of the government, but for which the government has elected, formally, , not to prosecute:

J. FBI rap sheet, NCIC printout, NADDIS, EPIC, NIJETS, ATS and TECS, and any other records available to the government, reflecting the arrest, conviction, and investigative

3

history of the cooperating witnesses, including any records regarding any misconduct.

K.    Information concerning prior misconduct by the cooperating witness in the performance of his role as an informant or witness, including: any prior refusal of the cooperating witness to testify for or assist the government; any prior allegation that the cooperating witness entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and any prior "blackballing" of the informant by any law enforcement agency;

L.    Information concerning misconduct by the witness other than in his role as a witness/informant, including misconduct that reflects on the lack of candor, truthfulness, or law-abiding character of the informant, such as uncharged criminal conduct, or fraud, including any misconduct on the pan of the cooperating witness.

M.    All information, records, and transcripts which in anyway indicate or reveal that any prospective government witness, in connection with this or any other case, has provided untruthful, false, misleading, incomplete, or inaccurate information or testimony to:

1.    Any state or federal law enforcement officer or agency.

2.    Any state or federal grand jury.

3.    Any state or federal trial court while testifying at trial and/or any related or preliminary proceeding including any state court depositions.

N.    Information reflecting the nature and extent of assets obtained by the informant in connection with his/her illegal activities Over the past ten years;

O.    Any "records" maintained by law enforcement agencies relating to the cooperating

4

witness utilized in this case, including records that the witness was:

1. Given a code name;
2. Given assumed/false identity;
3. Reasons for cooperation;
4. whether given a polygraph exam;
5. Whether briefed on entrapment;
6. Contracts executed with any law enforcement agency;
7. Any release forms executed by the witness;
8. Records revealing the witness was advised to pay Federal Income Taxes;
9. Records that he could not violate the law;
10. Records which require him to protect the false identity;
11. Records that the witness cannot use any illegal drugs.

P.  If given a polygraph exam, the results of any polygraph examination performed on any potential government witness as well as any information concerning the failure of any potential government witness to submit to a polygraph examination.

Q.  Any government agency files or other information revealing matters relevant to the cooperating witness's credibility, mental or physical health, or narcotic or alcohol use or other dependency.

R.  All information and records revealing any potential impairment of the capacity of any prospective government witness to observe, recollect, and testify about the events giving rise to the charges filed in this case, including impairments of sight, hearing, memory, language or other physical or psychological disability.

S.  All information and records indicating that any prospective government witness (1) may have suffered from any mental or emotional disease, disorder, illness, or defect at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any such mental or emotional disease, disorder, illness, or defect at any time within the past five years.

5

T.   All information and records indicating that the prospective government witness (1) may have used cocaine, marijuana, or other controlled substances or used alcohol to excess at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any substance abuse problem (including alcohol) at any time within the past five years.

U.   All information and or statement by co-defendants, cooperating individuals, or other individuals which suggest that the defendant was not criminally involved in all or part of the alleged activities contained within the indictment.

V.   A complete summary of the immigration status of the cooperating witness at the time of the events at issue in this case, and at any other time he has acted as an agent of the United States Government or any other law enforcement agency in the United States

## MEMORANDUM OF LAW

## PRIOR UTILIZATION OF AND TESTIMONY BY INFORMANT

### RE: SERVICE AS INFORMANT

Information regarding the prior utilization of the witness is material and favorable within the terms of *Brady V. Maryland*, 373 U.S. 83 (1963). where it reveals the informant's *modus operandi* in setting up criminal transactions. *Johnson V. Brewer*, 521 F.2d 556 (8th Cir. 1975). Further, evidence is also discoverable, pursuant to *Giglio v. United States*, 405 U.S. 150(1972), and *United States V. Bagley*, 473 U.S. 667 (1985), to aid in the impeachment of a witness. Similarly, the prior testimony of the informant on themes material to his service as an informant should be disclosed where the defense proposes to examine the informant on those themes at trial. *Johnson V. Brewer, supra*, 521 F.2d at 563. In *United States V. Cohen*, 888 F.2d 770, 776-777 (11th Cm 1989), the Eleventh Circuit recognized the importance of such evidence, reversing the conviction where the trial

court had excluded evidence offered under Fed. R. Evid. 404(b) that the primary informant had previously concocted and managed a fraudulent scheme.

In *Mesarosh v. United States*, 352 U.S. 1(1956), the Supreme Court reversed the defendant's conviction and remanded for a new trial to allow the defendant to present previously undisclosed evidence that the government's key witness testified falsely in similar, but unrelated proceedings. The Eleventh Circuit reaffirmed the vitality of the *Mesarosh* decision in *UnitedStates V. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990), holding that the

government may not withhold evidence that a witness has made prior false statements in a matter within the jurisdiction of a federal agency. *Cf. United States V. Williams*, 500 F.2d 105, 108(9th Cir. 1974) (granting new trial under *Mesarosh* to allow defendant to present to jury evidence of witness's false statements in other proceedings).

### PREFERENTIAL TREATMENT GIVEN AND THREATS MADE TO WITNESSES, INCLUDING MONIES PAID AND PROMISES OF FINANCIAL AWARD

The Standing Discovery Order, paragraph D, compels disclosure of the "existence" and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses." By his request, defendant seeks a full record of all consideration given to the witnesses and his family or friends as a result of his cooperation in this case, as well as any other case in which the witnesses have provided services. Detailed information and records are needed to demonstrate the motive of the witnesses and are discoverable. *Gigilo v. United States* 405 U.S. 150(1972); *United States v. Williams*, 954 F.2d 668 (11th Cir 1992).

The witness' motive to testify in favor of one party and against another is a matter open to discovery and introduction in evidence. Fed. R. Evid. 608. The Eleventh Circuit Pattern Criminal Jury Instructions, Special Instructions 1.1, 1.2 and 1.3, highlight the importance of such evidence in

7

judging the credibility of testimony.

> For example, a paid informer, or a witness who has been promised he will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because he wants to strike a good bargain with the government.

11th Circuit Pattern Criminal Jury Instructions, Special Instruction 1.1. See *United States v. D'Antignac,* 628 F.2d 428,435-436 n.l0 (5th Cir. 1980); *United States v. Abravaya,* 616 F.2d 250 (5th Cir. 1980). Evidence that the government has threatened a potential witness to obtain the witness' cooperation is not only admissible, but may demonstrate unconstitutional interference with the defendant's right to free access to witnesses. *United States v. Hendricksen,* 564 F.2d 197, 198 (5th Cir. 1977); *United States v.. Heller,* 830 F.2d 150, 152(11th Cir. 1987).

Defendant further seeks information as to threats or promises made to the witnesses, his family, or his friends to motivate his cooperation. Such *Giglio* material is discoverable to allow defense counsel to establish the bias or hostility of the informant in creating the circumstances of the instant case. It is proper impeachment to question a cooperating witness about the dismissal of charges against him or other preferential treatment given to his Or her family. *United States v. Nickerson,* 669F.2d 1016,1018(5th Cir. 1982). The threats/benefits evaluation is not limited to the informant alone. *United States v. Partin,* 493 F.2d 750, 757 (5th Cir. 1974).

Similarly, unconsummated promises of financial remuneration, or other awards or benefits, are discoverable as to the informant. Thus, where the informant harbors an expectation of a future financial award for his services in obtaining a conviction, such evidence is crucially important to the defense. *United States V. Williams,* 954 F.2d 668. (11th Cir. 1992). Defendant seeks disclosure of any promise, formal or informal, written or oral, to the witnesses, that would lead the witness to have an expectation of award in the instant case.'

8

## CONFLICTING WITNESS STATEMENTS

Conflicting statements of eye witnesses must be turned over to the Defendant. *Kyle v. Whitley*, 514 U.S. 419 (1995). Any witness maybe impeached by prior inconsistent statements. *United States v. Winkles*, 587 F.2d 705, 710(5th Cir. 1979). Such inconsistencies should thus be disclosed to the defendant prior to trial pursuant to *Giglio v. United States*. In *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir. 1977), the court held that the government's failure to disclose aneyewitness's prior statement that was inconsistent with the testimony of the government's key trial witness was reversible error. In *United States v. Martino*, 648 F.2d 384(5th Cir. 1981), the court stated:

> As impeaching evidence, the prior inconsistent statement would fall within disclosure requirements because *Brady* encompasses impeachment evidence as well as evidence favorable to the accused on the issue of guilt.

In *Jones v. Jago*, 575 F.2d 1164, 1166(6th Cir.), cert denied, 439 U.S. 883(1978), the court held that an eyewitness's statement to the government that, although not expressly exonerating the defendant, made no reference to tile defendant's presence or participation in the offense was Brady material and the failure to disclose such statement required reversal of the conviction. This type of Brady material, though negative or neutral in character, may be the key to a favorable defense. This Court has held that a report of a witness interview that reveals circumstantial evidence that a person other than the defendant may have been the actual perpetrator of the offense is Brady material. *Troedel v. Wainwright* 667 F.Supp. 1456 (S.D. Fla. 1986).

Even though such a defense-favorable or neutral statement may otherwise be protected from

---

28 U.S.C. 524, allows tile government at the government's discretion to pay the witness 25%of any property forfeited to the government or $250,000.00, for each forfeiture.

9

disclosure under the *Jencks* Act, the government is under a due process obligation to disclose it to the defense sufficiently in advance of trial to allow the defense an adequate opportunity to investigate the evidence. *United States v. Campagnulo*, 592 F.2d 852, 859 (5th Cir. 1979).

## WITNESSES' ARREST AND CONVICTION RECORD, UNAUTHORIZED CRIMINAL ACTIVITY AND OTHER MISCONDUCT

An informant's history of criminal activity and other misconduct is relevant to consideration of his credibility, bias, motive, and *modus operandi*.

The informant's history and pattern of criminal activity and misconduct serve to illustrate the methods normally employed by the informant to achieve his goals. Such evidence "might easily extend beyond that of mere impeachment." *UnitedStates v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990). In *Espinosa-Hernandez*, the Eleventh Circuit reversed the district court's failure to grant flail discovery as to an undercover agent's misconduct relating to the handling of informants. *Cf Haber V. Wainwright*, 756 F.2d 1520 (11th Cir. 1985) (prior criminal conduct relevant where witness may have been promised immunity).

Along the same line, the courts have held discoverable, and highly relevant, information regarding prior or contemporaneous perjury or bizarre testimony of an informant, *United States v. Mesarosh*, 352 U.S. 1 (1956), and other evidence of the unreliability of an informant witness.

## FEDERAL INCOME TAX RETURNS

The defendant specially requests the Federal Income Tax records of the cooperating witnesses for each year in which any law enforcement agency provided compensation of any type or the witness received income from illicit activity. *United States v. Shaffer*, 789 F.2d 682,688-689 (9th Cir. 1986).

Federal law enforcement agencies require informants to pay federal income taxes on monies

10

received. (See, Drug Enforcement Manual, ("DEA") Chapter 66, Section 6612.31). The defendants entitled to these records since he has a good faith basis to believe that the informant has not paid taxes or misrepresented them in violation of federal law.

## ASSETS OBTAINED BY INFORMANT THROUGH CRIMINAL ACTIVITY

The discovery of any and all assets obtained by the witnesses through criminal activity is sought as verification of the extent of the informant's prior criminal activity and his motive to protect such assets from forfeiture and taxes. *United States v. Shearer*, 794 F.2d 1545, 1551(11th Cir.1986), Seventh Circuit Pattern Criminal Institutions, 3.21 (modified).

## FILES REFLECTING WITNESSES' BAD CHARACTER

Federal law enforcement agencies maintain at least two separate files on informants. One is the investigative file and the other has tile informant/witnesses background, payments, and false identity. The defendant requests any and all favorable information in any law enforcement file maintained for the cooperating witness, no matter where located.

In *United States . Brumel-Ajvarez*, 991 F.2d 1452 (9th Cir. 1992), the court held that the failure to disclose an internal DEA memorandum regarding tile informant's conduct directly impacted on the informant's credibility requiring disclosure pursuant to the dictate of Brady.

"An [AUSA] using a witness with an impeachable past has a constitutionally derived duty to search for and produce impeachment information requested regarding a witness". *United States v. Osorio*, 928 F.2d 753, 760 (1st Cm 1991) (citing *Giglio*).

In *United States v. Deutsch*, 475 .2d 55, 58(5th Cir. 1973), the court compelled disclosure of a postal employee's personnel file where evidence failed to negate indications that the employee, who had acted in the role of an informant, may have had disciplinary problems. Similarly, in *United States v. Garrett*, 542 F.2d 23, 26 (6th Cir. 1976), the court reversed the defendant's conviction

11

where the district court foreclosed discovery and cross-examination as to an undercover agent's disciplinary records relating to his use of narcotics and failure to submit to urinalysis. The court noted that such evidence was relevant because the undercover agent "might well have looked upon a successful prosecution of [the defendant] as a means of having

his [own] suspension [from duty] lifted." Id.

### REVIEW OF LAW ENFORCEMENT RECORDS

The prosecution has a duty to disclose exculpatory evidence even if the prosecutor does not know about the evidence and only the law enforcement agents are familiar with it. *Kyles v. Whitley*, 514 U.S. 419(1995).

The government has an institutional responsibility to canvass all sources relied upon in the prosecution including other law enforcement agencies. The government once placed on notice has a responsibility to search all depositories of records of cooperating law enforcement agencies to obtain information discoverable by the Defendant. *Unites States v. Brooks*, 966 F.2d 1500 Q.C. Cir.1992).

### IMPAIRMENT OF WITNESS BY PHYSICAL, MENTAL DISABILITY OR SUBSTANCE ABUSE

### PSYCHIATRIC TREATMENT:

The Fifth Circuit, in *United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974), explained why such impeachment information must be disclosed:

> It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing. It all goes to the ability to comprehend, know and correctly relate the truth.

Particularly relevant is evidence that such an individual [witness] is undergoing psychiatric treatment. See, *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983); *United States*

12

V. Butt, 955 F.2d 77,82-83(1st Cir. 1992); United States V. Collins, 472

F.2d 1017(5th Cir. 1972); United States v. Fowler, 465 F.2d 664 (D.C. Cir. 1972); *United States v. Romano*, 482 F.2d 1183 (5th Cir.1973).

## PHYSICALLY OR EMOTIONALLY IMPAIRED

In *United States v. Collins*, 472 F.2d 1017, 1018 (5th Cir. 1972), the court acknowledged that a witness's narcotics use is material and the testimony of a narcotics user is to be considered with caution. Similarly, in *United States v. Fowler*, 465 F.2d 664 D.C. Cit. 1972), the court held that the defendant was entitled to know whether a government witness was a narcotics user.

Additionally, in *United States V. Garner*, 581 F.2d 481, 485 (5th Cir. 1978), the court held that the testimony of witnesses who bad formerly used heroin should be weighed with caution. This panel highlighted that even though the witness had undergone methadone treatment and was no longer using heroin at the time they observed the events of the case, it was left to the jury to "take this information into account in weighing the witnesses' credibility." Id. Thus, it is well established that a defendant is entitled to a jury instruction advising that the testimony of a narcotics user or addict should be considered with care due to a motive to lie and impairment of the ability to accurately observe. See Eleventh Circuit Pattern Criminal Jury Instructions, Special Instruction 1.3;Fifth Circuit Pattern Criminal Jury Instruction, 1.17.

## POLYGRAPH RESULTS

The Eleventh Circuit in *United States v. Piccinonna*, 885 F.2d 1529 (11th Cm 1989), recognized that polygraph examination results are admissible to impeach or bolster any witness's credibility, subject to the district court's exercise of discretion in the admission of such evidence. See Fed. R. Evid. 403, 608(b). Polygraph results which tend to show that a witness has made false or conflicting statements to the government thus are relevant and discoverable. while admissibility issues may be resolved at trial, the underlying facts material to impeachment must be disclosed prior

13

to trial to allow for adequate defense preparation. *Gigilo v. United States*, 405 U.S. 150(1972).

## WITNESS' RECORD OF ARRESTS AND MISCONDUCT

Pursuant to Fed. R. Evid. 608(b), a witness may be cross-examined as to specific instances of conduct "concerning the witness' character for truthfiilness or untruthfulness." Thus, courts have held that in given circumstances a witness may be questioned regarding prior arrests not leading to conviction. *United States v. Croucher*, 532 F.2d 1042,1045 (5thCir. 1976) (informant witness' full arrest record relevant to showing motive to strike a good bargain with the government).

Similarly, uncharged misconduct of a witness is fair game for impeachment on cross-examination. *United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir. 1984) (reversible error to refuse to permit cross-examination of government witness as to alleged post-plea drug activities); *United States v. Espinosa-Hernandez*, 918 F.2d 911, 914(11th Cir. 1990) (government witness' misconduct bears directly on credibility); *United States v. Cohen*, 888 F.2d 770, 776-777 (11th Cir. 1989)(conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(1.) that prosecution witness had previously concocted and managed a fraudulent scheme); *United States v. McClure*, 546 F.2d 670, 673 (5th Cir. 1977) (conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(1,) to show that informant had previously entrapped other defendants).

14

**WHEREFORE** the defendant requests all the foregoing.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this day of December 7, 2000 to Roger Powell, United States Attorney's Office, 500 E. Broward Blvd., Suite 700, Ft. Lauderdale, Florida 33394.

> Respectfully Submitted,
>
> **LAW OFFICES OF AMY AGNOLI,**
> Attorney for Defendant
> 1443 South Miami Avenue
> Miami, Florida 33130
> (305) 358-7373
>
> By_____
>   Amy Agnoli
>   Florida Bar No.: 500038

15